UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO: 3:07-CV-671-R

LAWRENCE R. FAIR
JANEY M. FAIR                                                                    PLAINTIFFS

v.

UNITED STATES OF AMERICA                                              DEFENDANT


## MEMORANDUM OPINION

This matter is before the Court upon the Defendant's Motion to Dismiss or for Summary

Judgment (Docket #15).  The Plaintiffs have responded (Docket #20) and the Defendant has

replied (Docket #21).  The Plaintiffs filed a surreply (Docket #23) without leave of the Court.

The Plaintiff Lawrence Fair has filed this case *pro se* and is representing himself and the estate

of his deceased wife, Janey Fair.  While courts hold *pro se* pleadings to less stringent standards

than pleadings drafted by attorneys, *pro se* litigants must follow the same procedural rules as

other litigants.  The Plaintiffs did not request leave of the Court to file the surreply, and the Court

will not consider it in this opinion.  However, the surreply does not alter the conclusion reached.

For the following reasons, the Defendant's Motion is **GRANTED**.

## BACKGROUND

In 1942, the Defendant United States of America condemned 1,119.8 acres of land in

Hardin County, Kentucky, for use as part of the Fort Knox Military Reservation.  The

declaration of taking was filed in the United States District Court for the Western District of

Kentucky.  A deed describing this property was registered in the Hardin County Clerk's office

on March 4, 1944.

In December 1977, Robert and Judith Bishop sold 355.4 acres of land in Hardin County to  Paul and Dorothy Sullivan.  In November 1978, the Bishops sold an adjoining 39.4 acres of land to the Sullivans.  The 39.4 acres was actually part of the 1,119.8 acres condemned in 1942. Before the sale, the Bishops had an employee from Fort Knox verify the location of the Fort Knox boundary during a survey of the land.  The survey indicates that it was prepared by Kenneth W. Young.  A Civil Engineering Technician named James Bomar signed the survey, presumably indicating his agreement that the land was outside the boundary of Fort Knox as the survey showed.

Mr. Sullivan later subdivided the land he purchased from the Bishops into three subdivisions-Valleydale Section I, II, and III.  In 1999, the Plaintiffs purchased nine tracts of the Valleydale subdivisions from the Sullivan estate.  In 2004, the Louisville Corps of Engineers contracted GRW Aerial Surveys, Inc., to conduct a retracement survey of the boundaries of the Fort Knox Military Reservation after the Corps became aware of possible boundary encroachment issues.

By a letter dated July 12, 2005, the Louisville Corps of Engineers notified the Plaintiffs that the survey of the Fort Knox boundary indicated that three of the tracts they purchased in 1999, Lot Nos. 35A, 36A, and 37, totaling 36.42 acres, encroached on the military reservation. The Plaintiffs also claim that 1.09 acres of their land has been rendered landlocked by the loss of the 36.42 acres.  The July 12 letter requested the Plaintiffs attend a meeting where representatives of the Louisville Corps of Engineers and Fort Knox Military Reservation would be present to answer their question.

In December 2006, the Plaintiffs filed an administrative claim pursuant to the Federal

2

Tort Claims Act, seeking compensation in the amount of $105,596.27.  The Army denied the

administrative claim by letter dated Jun 11, 2007.  The Plaintiffs filed the instant suit on

December 5, 2007, claiming that the loss of the land they had purchased was due to the

"negligent and wrongful acts and omissions of an employee or employees of the Government

while acting within the scope fo their office."  They essentially allege in the Complaint that Mr.

Bomar was negligent and that his supervisors negligently failed to supervise him.

**STANDARD**

The Defendant's Motion is styled as a Motion to Dismiss or for Summary Judgment.  As

discussed below, the application of the discretionary function exception to the Federal Tort

Claims Act requires a dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).

"When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure, the district court must accept all of the allegations in the complaint as true, and

construe the complaint liberally in favor of the plaintiff."  *Lawrence v. Chancery Court of Tenn.*,

188 F.3d 687, 691 (6th Cir. 1999) (citing *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995)).

Denial of the motion is proper "unless it can be established beyond a doubt that the plaintiff can

prove no set of facts in support of his claim which would entitle him to relief."  *Achterhof v.

Selvaggio*, 886 F.2d 826, 831 (6th Cir.1989) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46

(1957)).  Nonetheless, unwarranted factual inferences or legal conclusions masquerading as fact

will not prevent a motion to dismiss.  *Blakely v. United States*, 276 F.3d 853, 863 (6th Cir.

2002).  A "complaint must contain either direct or inferential allegations respecting all the

material elements to sustain a recovery under some viable legal theory."  *Andrews v. Ohio*, 104

F.3d 803, 806 (6th Cir. 1997) (citing *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir.

3

1993)).

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

The Plaintiffs do not present the claims in their complaint as separate counts. Instead, the Plaintiffs have presented "Claims for Relief." The Defendant identified four distinct causes of action in the list of "Claims of Relief," and the Court agrees with Defendant's characterization.

4

First and second, the Defendant argues that the Plaintiffs' claims amounting to negligent misrepresentation and negligent supervision are both barred by the misrepresentation exception to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671-2680.  In the alternative, the Defendant argues that the Plaintiffs' negligence claims should fail because the Army owed them no duty.  Third, the Defendant argues that the Plaintiffs' claim that the Army was negligent in failing to properly mark the boundaries of its property is barred by the discretionary function exception to the FTCA.  Fourth, the Defendant argues that the Plaintiffs' claim that their property was taken without due process is unfounded.

## A.  Misrepresentation Exception to the FTCA

The United States, as sovereign, is immune from suit and cannot be sued without its consent.  *United States v. Sherwood*, 312 U.S. 584, 586 (1941).  The FTCA is the exclusive waiver of sovereign immunity for actions sounding in state tort law against the United States, its agencies, and officers acting within their official capacity.  The Act provides that the federal district courts, "subject to the provisions of [the act]," are to have:

> exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b).

In § 2860, the FTCA sets forth certain conduct that is excepted from the waiver of sovereign immunity.  The "misrepresentation exception" is contained in § 2860(h).  It states that the provisions of § 1346(b) do not apply to: "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander,

*misrepresentation*, deceit, or interference with contract rights..." (emphasis added).  Thus, under § 2680(h), "Congress has chosen not to allow the courts to consider 'any claim arising out of… misrepresentation.'"  *Fitch v. United States*, 513 F.2d 1013, 1015 (6th Cir. 1975).

### 1.  Plaintiff's claim that Mr. Bomar incorrectly identified boundary lines

The Plaintiffs claim, in paragraph 22(a) of their complaint, that Mr. Bomar failed to correctly identify the location of the Fort Knox boundary line and improperly indicated that the Plaintiffs' purchased property was outside the boundary line, when it in fact was not.  The Defendant asserts that this is an allegation, in essence, that Mr. Bomar misrepresented the correct boundary lines.

"It is settled that [the misrepresentation] exception includes claims arising out of negligence as well as intentional misrepresentation."  *Id.* (citing *United States v. Neustadt*, 366 U.S. 696, 706 (1961)).  Even though a complaint may be cast "in the guise of a negligence action, this does not automatically take the case outside the misrepresentation exception."  *Id.* Instead, "courts must 'look beyond the literal meaning of the language to ascertain the real cause of complaint.'"  *Id.* (quoting *Hall v. United States*, 274 F.2d 69, 71 (10th Cir. 1959)).

A pertinent example of a negligence action found to fit within the misrepresentation exception was cited by the Sixth Circuit in *Fitch*.  The *Fitch* court cited the case *Vaughn v. United States*, 259 F. Supp. 286 (N.D. Miss. 1966) as an example of the proposition that the other Circuits have analyzed negligence claims as actually "arising out of" a negligent misrepresentation.  *Fitch*, 513 F.2d at 1016, 1016 n.2.  In *Vaughn*, the plaintiff sought to recover damages from the United States under the FTCA for injuries he sustained when "the bucket of the dragline which he was operating as an employee of Vaughn & Black, contractors, struck a

6

30-inch natural gas pipeline." *Vaughn*, 259 F.Supp. at 286.  The plaintiff alleged that the Soil Conservation Service, United States Department of Agriculture, negligently failed to show on plans and drawings that a gas pipeline was within the area in which he was working.  *Id.*

The plaintiff argued that his action was based on "the negligent breach of a duty to warn of the existence of a dangerous condition," but the court agreed with the United States that his claim was "one 'arising out of misrepresentation' within the meaning of 28 U.S.C. § 2680(h)" and could not be maintained under the FTCA.  *Id.* at 287, 289.  The court reasoned that the plaintiff cast his complaint in terms of negligence "on the part of employees of the United States in failing to properly show on the plans and drawings the work area in relation to the pipeline and in failing to advise the contractor and the employees of the contractor of the location of the pipeline in relation to the work area."  *Id.* at 289.  Thus, the court stated that the basis of his claim was "that of negligent misrepresentation to the effect that the pipeline did not cross within the work area, when, in fact, it did."  *Id.*

The Defendant argues that because the Plaintiffs' compliant is, in essence, that a government employee negligently misrepresented boundary lines, it should be dismissed.  The Defendant asserts that the claim against Mr. Bomar, a government employee, may be construed as a claim of negligent misrepresentation but not of pure negligence, because he did not personally conduct the survey of the land but only verified the boundary line.  Instead, the survey of the 39.4 acre plot indicates that it was prepared by Kenneth W. Young, identified under his signature on the survey as "Land Surveyor."

The Defendant argues that KRS § 322.400[1] requires that a professional land surveyor certify any survey to be recorded, thus, performing the actual survey could not have been the task of the government.  While Mr. Young's signature on the survey certainly indicates that he was a land surveyor, there is no other evidence in the record confirming his identity.  However, Mr. Young's identity does not affect the analysis because the Plaintiffs claim that Mr. Bomar is at fault for failing to identify the correct boundary line.  Given this, the Defendant argues that Mr. Bomar's statement about the location of the boundary line, at best, misrepresented the true line, and complaints based on misrepresentation are barred under the FTCA.

In an attempt to avoid the application of the misrepresentation exception, the Plaintiffs argue in response that Mr. Bomar was not, in fact, negligent in locating the boundary line because he made his "best good faith" effort to correctly locate the Fort Knox boundary.  This argument stands in direct contrast to the complaint.  In their complaint, the Plaintiffs assert that they lost their land "due to the negligent and wrongful acts and omissions of an employee or employees of the Government while acting within the scope of their office."  Namely, the Plaintiffs claim that "Mr. James C. Bomar failed to correctly identify the location of the Fort Knox reservation boundary line..."  The complaint plainly shows that the Plaintiffs' claim is based on alleged negligence of government employees.

The Court agrees with the Defendant that the Plaintiffs' claims regarding any

_____

[1]"No county clerk of any county, or any other public authority, shall accept for filing, file, or record any map, plat, survey, or other document related to the practice of land surveying, unless it evidences certification by a professional land surveyor by whom, or under whose personal supervision and direction, the map, plat, survey, or other document was prepared." KRS § 322.400 (2008).  This version of the statute is the result of a 1998 amendment, but the version of the statute enacted in 1966 did not differ in substance, only in style.

representations made by Mr. Bomar regarding the boundary lines should be dismissed because that claim falls within the misrepresentation exception of § 2860(h) of the FTCA.

### 2.  Plaintiffs' claim that Mr. Bomar was negligently supervised

In paragraph 22(b) of the complaint, the Plaintiffs claim that "Mr. James C. Bomar failed to monument, record, or gain approval from his superiors for his interpretation of the location of the Fort Knox Boundary."  In paragraph 22(c), the Plaintiffs assert that "Mr. Bomar's supervisors failed to monitor Mr. Bomar to ensure his actions were within his capability, training or knowledge, and that his location for the installation boundary in 1978 was correct."  The Defendant argues that these are, in essence, claims that the government was negligent in its supervision of Mr. Bomar, which are also barred by the misrepresentation exception to the FTCA.

The FTCA bars all claims "arising out of" misrepresentation.  Section 2680(h) states that the provisions of § 1346(b) do not apply to: "[a]ny claim *arising out of* assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights..."  The Defendant argues that any claims of negligent supervision must arise out of Mr. Bomar's representations regarding the boundary lines.

For example, in *Satterfield v. United States*, 788 F.2d 395 (6th Cir. 1986), the plaintiff administratrix of the estate of the decedent, a private in the United States army beaten to death by
 by three fellow servicemen while on weekend leave, set forth a "wrongful death claim predicated on a negligence theory."  *Id.* at 399.  The plaintiff claimed "that the Army's negligent

9

supervision of these servicemen was the proximate cause of [the decedent's] death." *Id.*  The court determined that the claim fell within the ambit of the intentional tort exception to the FTCA, which provides in § 2680(h) "that governmental immunity under the Act will not apply to "any claim arising out of assault [or] battery...'" *Id.* (quoting 28 U.S.C. § 2680(h)).  The court emphasized that § 2680(h) does not only bar claims for assault and battery, it bars all claims *arising out of* assault and battery.  *Id.*  (discussing similar case *Shearer v. United States*, 723 F.2d 1102, 1106 (3d Cir. 1983)).  The plaintiff's claim stemmed from, or arose out of, a battery conducted by government employees, even though it sounded in negligence, and was therefore barred by the intentional tort exception to the FTCA.  *Id.*

The Court agrees with the Defendant that the Plaintiffs' claim of negligent supervision of Mr. Bomar during his misrepresentation of the boundary line arises out of Mr. Bomar's misrepresentation of the boundary, and is barred by the misrepresentation exception of § 2860(h) of the FTCA.

### 3. Duty owed by United States to the Plaintiffs

The Defendant argues that even if no exceptions to the FTCA barred the Plaintiffs' claims, the United States would not be liable to the Plaintiffs because it owed them no duty. The Defendant asserts that the Plaintiffs do not allege that Mr. Bomar made representations of any kind directly to them and point to the fact that his representation regarding the boundary line was removed in time from the Plaintiff's purchase of the land by more than twenty years and at least two intermediate purchases.

However, the Court does not need to consider this alternative argument because the misrepresentation exception of  § 2860(h) of the FTCA does bar the above two claims.

10

**4. Discretionary function exception to the FTCA**

In paragraph 22(e) of the complaint, the Plaintiffs claim that the United States, "its employees and agents failed to identify, survey, mark or monument government property as any prudent property owner would do, for sixty years."  The Defendant argues this claim is barred by the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a), because the decision not to survey, mark, or monument the Fort Knox boundary is a discretionary function.  Accordingly, the Defendant argues that this claim should be dismissed for lack of subject matter jurisdiction. *Rich v. United States*, 119 F.3d 447, 450 (6th Cir. 1997) (stating that when discretionary function exemption applies, the court lacks subject matter jurisdiction).

Section 2680(a) states that provisions of the FTCA shall not apply to:

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

The Supreme Court articulated a two-part test for applying the discretionary function exception in *Berkovitz v. United States*, 486 U.S. 531 (1988).  First, the employee's action or omission must have been a matter of choice, because "[c]onduct cannot be discretionary unless it involves an element of judgment or choice."  *Berkovitz*, 486 U.S. at 536 (citing *Dalehite v. United States*, 346 U.S. 15, 34 (1953)).  The exception does not apply when a  federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow," because in such a situation "the employee has no rightful option but to adhere to the directive." *Id.*  Instead, employees are entitled to some protection if they are required to exercise some kind of judgment in the execution of their responsibilities.  *Rich*, 119 F.3d at 450 (citing *Berkovitz*,

11

486 U.S. at 536).

Second, if the action or omission involved a matter of judgment, the court "must determine whether that judgment is of the kind that the discretionary function exception was designed to shield." *Berkovitz*, 486 U.S. at 536.  With this part of the test, "'Congress wished to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'" *Rich*, 119 F.3d at 450 (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense,* 467 U.S. 797, 814 (1984).  "The exception, properly construed, therefore protects only governmental actions and decisions based on considerations of public policy." *Berkovitz*, 486 U.S. at 537.  "In sum, the discretionary function exception insulates the Government from liability if the action challenged in the case involves the permissible exercise of policy judgment." *Id.* at 537.

The Defendant argues that both prongs of the discretionary function test are met here and that the decision not to mark or remark the Fort Knox installation boundary after the 1942 condemnation was a discretionary function.  The Plaintiff has produced no evidence that after the initial condemnation in 1942, the Army was required to survey the boundary again.

Army Regulation 405-10, Acquisition of Real Property and Interests Therein, dated May 14, 1970, paragraph 2-19(b) states:

> Installation boundaries will not be surveyed, monumented, fenced, or posted without prior approval of the Chief of Engineers.  Request for one or more of these actions will be made to the Chief of Engineers by the Major Army commander, the heads of Special Staff agencies or their designees.  The request will include--
>
> (1) Facts establishing the necessity and justification for the proposed action.
> (2) A detailed cost estimate.
> (3) An estimate of the time required to complete the work.
> (4) A statement as to the number of additional personnel required.
> (5) The source and availability of funds.

12

This army regulation addressing the surveying of installation boundaries clearly shows that an installation commander has no independent authority to mark the boundaries of his or her post without obtaining authorization from the Chief of Engineers.  Further, the decision to survey, monument, fence, or post a boundary requires the consideration of five factors.  These factors indicate that an installation boundary *may* be surveyed at some unspecified time if the Chief of Engineers finds that it is necessary, that there are funds available to cover the cost, that there is time available in which to conduct the survey, and that the required amount of personnel are available.  This regulation clearly prescribes a balancing process that works its way through a chain of command and involves multiple layers of choice, it does not prescribe a course of conduct for commanders or Corps of Engineers officials.  *Berkovitz*, 486 U.S. at 536.

Absent mandatory standards and procedures for the identification, surveying, or marking of the Fort Knox installation boundary, the decision of the Army not to mark or re-survey the Fort Knox installation boundary after the initial condemnation in 1942 was discretionary in nature, thus satisfying the first condition of the *Berkovitz* analysis.

As stated above, "the second condition of the *Berkovitz* analysis for the application of the discretionary function exception is that the decision must be of the kind the exception was intended to shield."  *Rich*, 119 F.3d at 451.  Multiple courts have ruled that where a federal agency, such as the Army Corps of Engineers, "must balance competing needs when deciding how to run a federal facility, the discretionary function exception to the FTCA" applies.  *Id.*

The decision of whether an installation boundary should be surveyed, monumented, fenced, or posted after an initial condemnation is really a question of how best to allocate the government's resources.  After receiving a request form an installation commander, the Chief of

13

Engineers must consider the costs as compared to the benefits, in accordance with regulatory guidelines.  "Such a decision is inherently bound up in considerations of economic and political policy, and accordingly is precisely the type of governmental decision that Congress intended to insulate from judicial second guessing through tort actions for damages."  *Id.* (quoting *Baum v. United States*, 986 F.2d 716 (4th Cir. 1993) (finding the government was immune from suit for an accident in which a passenger vehicle broke through a guardrail owned and maintained by the National Park Service)).

The Corps' lack of action here, in failing to "identify, survey, mark or monument government property as any prudent property owner would do, for sixty years," as the Plaintiffs claim, should be protected by the discretionary function exception because re-surveying, marking, or monumenting the Fort Knox boundary "was not 'explicitly required by statute or regulations.'"  *Id.* at 452 (quoting *Reminga v. United States*, 631 F.2d 449, 456 (6th Cir. 1980)).  Accordingly, this claim must be dismissed for lack of subject matter jurisdiction.

**5. Due Process**

In paragraph 22(f) of their complaint, the Plaintiffs assert that the "United States Army Corps of Engineers has claimed the property without due process."  The Plaintiffs argue that after the survey commissioned in 2004, which relocated the boundary established by Mr. Bomar in 1978 onto the property purchased by the Plaintiffs in 1999, officials at Fort Knox refused to grant them access to the property without "discussion, arbitration, or negotiation."  The Plaintiffs also argue in response to the motion for summary judgment that the survey commissioned in 2004 was incorrect, and that the subsequent encroachment notices they were issued constituted an unlawful taking.  The Plaintiffs argue that because "the property was wrongfully seized,

judgment and damages should be awarded" to them under 28 U.S.C. § 2465.

The Defendant argues that 28 U.S.C. § 2465 provides for the return of the property, and an award of attorney fees and costs only "[u]pon the entry of a judgment for the claimant in any proceeding to condemn or forfeit property seized or arrested under any provision of Federal law." 28 U.S.C. § 2465(a)-(b). This action is not a civil proceeding to forfeit property under any provision of Federal law, and therefore the Defendant is correct in arguing that this Court could never award the Plaintiffs a remedy under § 2465; it does not apply in the instant case.

The Defendant argues that the Plaintiff's due process claim is not cognizable because in 1942, the United States properly condemned and acquired title to the land the Plaintiffs eventually purchased, and the encroachment notices the Plaintiffs were issued can not constitute a taking.

There is no question that in 1942, the United States properly condemned 1,119.8 acres of land in Hardin County, Kentucky, for use as part of the Fort Knox Military Reservation. As required, the declaration of taking was filed in the United States District Court for the Western District of Kentucky and a deed describing this property was registered in the Hardin County Clerk's office on March 4, 1944. Over time, adjacent property owners mistakenly sold and acquired land that was actually a part of the condemned 1,119.8 acres. In 1978, a survey of the Fort Knox boundary mistakenly showed that the land eventually purchased by the Plaintiffs was not included in the condemned acreage. The land in question was properly taken by the United States in 1942; the Plaintiffs never truly acquired title to the land, even though they believed they had. Therefore, the United States did not take the Plaintiff's property without due process. The Defendant is entitled to summary judgment as to the Plaintiff's due process claim.

15

## CONCLUSION

For the foregoing reasons, the Defendant's Motion to Dismiss or for Summary Judgment

is **GRANTED.**

An appropriate order shall issue.